**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ZEOLA CRAWFORD,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No. JFM-15-cv-679** |
| **STATE OF MARYLAND et al.,** | * | **(State Court Case No. 24-C-15-000462)** |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MARYLAND TRANSIT ADMINISTRATION'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS AND MOTION FOR SUMMARY
<u>JUDGMENT</u>**

Now comes the Maryland Transit Administration (hereinafter "MTA"), by its undersigned counsel, pursuant to Federal Rules of Civil Procedure 56 and 12(b)(6), hereby submits this Memorandum of Law in Support of Its Motion to Dismiss and Motion for Summary Judgment and states as follows:

## TABLE OF CONTENTS PURSUANT TO LOCAL RULE 105(4)

I.      **INTRODUCTION** ................................................................................................ 3

II.     **PROCEDURAL BACKGROUND** ................................................................... 4

III.    **FACTUAL BACKGROUND** .......................................................................... 5

IV.     **LEGAL STANDARD** ..................................................................................... 8

V.      **ARGUMENT** ................................................................................................... 9

    A.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count III for "Violation of the Maryland Declaration of Rights" Because Plaintiff Cannot Meet Her Burden as a Matter of Law ..........................................................................................................10

        *1.   There Is No Evidence the MTA Intentionally Deprived Plaintiff of Rights Protected by Article 24* ......................................................................................... 11

        *2.   There Is No Evidence that the MTA Intentionally Deprived the Plaintiff of Rights Protected by Article 26* ...................................................................................... 13

    B.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count IV for Assault and Battery Because Plaintiff Cannot Meet Her Burden as a Matter of Law......................16

        *1.   Plaintiff's Claim for Assault Is Barred by the Statute of Limitations and Should Be Dismissed.* ................................................................................................... 16

        *2.   The MTA Is Entitled to Summary Judgment as to Plaintiff's Claims for Assault and Battery Because Plaintiff Cannot Meet Her Burden as a Matter of Law.* ............... 17

    C.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count V for False Arrest and Imprisonment Because Plaintiff Cannot Meet Her Burden as a Matter of Law .............19

    D.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count VI for Negligence Because Plaintiff Cannot Meet Her Burden as a Matter of Law ....................................21

    E.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count VII for Gross Negligence Because Plaintiff Cannot Meet Her Burden as a Matter of Law .................22

    F.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count VIII for Intentional Infliction of Emotional Distress Because Plaintiff Cannot Meet Her Burden as a Matter of Law .................................................................................................................24

    G.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count IX for Negligent "Hiring, Training, Supervision, Discipline and Retention" Because Plaintiff Cannot Meet Her Burden of Proof as a Matter of Law .............................................................28

    H.   Plaintiff's Demand for Punitive Damages Should Be Struck Because Plaintiff Cannot Meet Her Burden of Proof as a Matter of Law ............................................................29

VI.     **CONCLUSION** ............................................................................................ 31

## I.     INTRODUCTION

This case arises from an incident that took place between Plaintiff, Zeola Crawford and several MTA Police Force officers concerning Mrs. Crawford's failure to present her light rail pass upon request at the Patapsco Avenue light rail station.  Plaintiff alleges in her Complaint that on September 4, 2012, at approximately 11:22 p.m., she was traveling on the Maryland Transit Administration ("MTA") light rail from Hunt Valley to the Patapsco Avenue station. After arriving at the Patapsco Avenue light rail station and exiting the train, MTA Police Force officers approached Plaintiff and requested to see her light rail pass.  There is no dispute based on the evidence in the record that Mrs. Crawford did not show her light rail pass after exiting the light rail, and after some back and forth with the officers, she was brought to the ground, handcuffed, and arrested for failure to obey and disorderly conduct.  The officers escorted Plaintiff to Baltimore City Central Booking, which is operated by the Baltimore City Police Department, where she was held overnight and later released.

Plaintiff's Complaint maintains that the MTA officers violated her rights under the Fourth and Fourteenth Amendment by using excessive force and falsely imprisoning her. Plaintiff also alleges claims of a "violation of the Maryland Declaration of Rights," assault, battery, false arrest, false imprisonment, negligence, gross negligence, intentional infliction of emotional distress, and "negligent hiring, training, supervision, discipline and retention." Accepting Plaintiff's allegations and testimony as true for the purposes of this motion, based upon the evidence in the record, Plaintiff cannot prove her claims against the MTA. The MTA files this Memorandum in Support of Its Motion for Summary Judgment because there is no dispute of material fact as to Plaintiff's claims and the MTA is entitled to judgment as a matter of law.

## II.    PROCEDURAL BACKGROUND

On January 28, 2015, Plaintiff filed suit in the Circuit Court of Maryland for Baltimore City alleging nine separate counts against seven defendants.  (*See* Pl.'s Compl.)  Plaintiff's Complaint named the following individuals and entities as defendants: the State of Maryland, the Maryland Transit Administration, the Maryland Transit Administration Police Force, Officer Spraggins, Officer Richardson, Officer Russell, and Corporal Rawlings, in their individual and official capacities.  (Pl.'s Compl. 1.)  On March 11, 2015, the MTA removed this case to the United States District Court for the District of Maryland on the basis of federal question jurisdiction. On June 17, 2015, this Court entered an order dismissing the State of Maryland, the Maryland Transit Administration Police Force, and the named officers in their official and individual capacities.  The only remaining defendant is the MTA.

Plaintiff's Count I alleged a claim for "Violation of Fourth and Fourteenth Amendment Rights under 42 U.S.C. 1983 – Excessive Use of Force" against the officers only.  (Pl.'s Compl.) 9.  Plaintiff's Count II alleged a "Violation of Fourth and Fourteenth Amendment Rights under 42 U.S.C. 1983 – Excessive Use of Force" against the officers only.  (Pl.'s Compl. 10.)  As Plaintiff's Counts I and II were only alleged against the dismissed officers and not the MTA, they are no longer at issue in this case.

Plaintiff's remaining counts (Counts III through IX) are alleged against all defendants, including the MTA, and remain at issue. Count III alleges a "Violation of Rights Secured under Articles Twenty Four and Twenty-Six of the Maryland Declaration of Rights."  (Pl.'s Compl. 11.)  Count IV alleges a "State of Maryland Claim of Assault and Battery."  (Pl.'s Compl. 13.)  Count V alleges a "State of Maryland Claim of False Arrest and Imprisonment."  (Pl.'s Compl. 13.)  Count VI alleges a "State of Maryland Claim of Negligence."  (Pl.'s Compl. 16.)  Count

VII alleges "State of Maryland Claim of Gross Negligence." (Pl.'s Compl. 17.) Count VIII alleges a "State of Maryland Claim for Intentional Infliction of Emotional Distress." (Pl.'s Compl. 18.) Finally, Plaintiff's Count IX alleges a "State of Maryland Claim of Negligent Hiring, Training, Supervision, Discipline and Retention." (Pl.'s Compl. 19.)

Thus, the remaining counts as to the MTA are claims for a "violation of the Maryland Declaration of Rights," assault, battery, false arrest, false imprisonment, negligence, gross negligence, intentional infliction of emotional distress, and "negligent hiring, training, supervision, discipline and retention." Additionally, Plaintiff's Complaint demands punitive damages. Each of these claims is addressed in more detail below.

During the course of discovery, Plaintiff did not depose any fact or expert witnesses and did not disclose any experts. Plaintiff also has not identified any additional independent fact witnesses who may have testimony regarding the incident. The only fact witnesses Plaintiff has identified are her treating medical providers. Plaintiff was deposed on March 7, 2016, and Defendant's expert, Dr. Rosenthal performed an independent medical examination on Plaintiff on May 20, 2016. Discovery closed on June 17, 2016.

## III.    FACTUAL BACKGROUND

Taking the factual record in the light most favorable to the Plaintiff, at approximately 11:22 p.m. on September 4, 2012, Plaintiff, Zeola Crawford, left work after her shift at McCormick & Company, Inc., and boarded the light rail in Hunt Valley, Maryland to travel toward her home stop - the West Patapsco Avenue station. (Pl.'s Compl. 1; *see also* Deposition of Zeola Crawford, March 7, 2016, at 22:8-11, relevant portions attached hereto as **Exhibit A**.) Upon arriving at West Patapsco Avenue, Plaintiff showed her light rail pass to an unidentified female officer on board the light rail before exiting. (Crawford Dep. 37:5-38:11.)

5

Plaintiff exited the light rail car onto the platform, where she observed two other MTA officers standing.  (Crawford Dep. 38:20-39:13.)  Upon exiting, Plaintiff testified a male MTA officer was asking to see patrons' bus passes and that a second female officer stood on the platform, to her right.  (Crawford Dep. 39:14-40:14.)  Plaintiff testified that she had her pass in her hand, but then placed it in her purse.  (Crawford Dep. 41:17-21.)  According to Plaintiff, the female officer asked her if she was feeling well and Plaintiff reported that she was feeling nauseous and sick.  (Crawford Dep. 43:5-44:5.)  The female officer walked her to the bust stop at to the other side of the station and Plaintiff sat down at the bus stop.  (*Id.*)  At that time, Plaintiff told the female officer that she didn't feel well and that she could not "compel herself" to pull out her pass again.  (Crawford Dep. 44:1-5.)  Instead, she asked the female officer to look into her bag for her bus pass.  (*Id.*)  The female officer informed Plaintiff that she could not.  (*Id.*)

While she was sitting at the bus stop, Plaintiff testified that the male officer "ran up on her" and yelled at her to show her pass.  (Pl.'s Compl. 7; Crawford Dep. 47:17-22.)  Plaintiff testified that the following interaction took place:

> A.  He was yelling and he was being disobedient towards his movement and action of an officer. And he came very close to my nose and he hit my nose and my head hit against the back of the glass of the bus, where I was sitting at. You know, in the bus stop you sit down on the bench, and he was in front of my nose and he went real close and my head went to the back and my wrists rise up, and he grabbed me and threw me down on the concrete.
>
> Q.  [. . .] Do you recall specifically he was yelling?
>
> A.  He was saying that you going to show your bus pass. And I said that the officer, the female officer said that I can wait until I get myself together. And he said I don't give a f—k what she said, you're going to f—king show me your bus pass. He said it down low so the regular officer would not hear them in my face.

(Crawford Dep. 50:1-20.)

After the face-to-face encounter, Plaintiff testified that the officer pulled her up off of the bench by her wrists and forced her to the ground with his knee in her back and handcuffed her. (Crawford Dep. 54:6-55:18.)   Plaintiff could not identify the officer, however he has been identified by Defendant as MTA Officer Tracey Spraggins.   There is no dispute for the purposes of this motion that Plaintiff was indeed brought to the ground to effectuate the arrest.   (Affidavit of Tracey Spraggins ¶ 6, attached hereto as **Exhibit B**.)   There is also no dispute that during the incident, the officer did not hit or punch the Plaintiff.   There is no dispute and Plaintiff did not testify that the officer threatened her with violence in any way, verbally or non-verbally, or with any weapon.   Indeed, Plaintiff testified that the officer's gun was holstered at his waist. (Crawford Dep. 52:6-8.)   Additionally it is undisputed for the purposes of this motion that Plaintiff said nothing to Officer Spraggins.   For example, she did not testify that she told him she would show him her pass, where her pass was located, or that she was feeling unwell.   In fact, she testified that she was "crying and upset," but that she did not recall verbalizing anything to him that would communicate her intention to comply.  (Crawford Dep. 57:13-21.)

Contrary to her Complaint allegations, Plaintiff also testified that while she may have been feeling unwell, she never vomited.  (Crawford Dep. 44:25-20.)  It is also undisputed that the light rail pass was not otherwise visible or apparent to the MTA officers involved in the incident after Mrs. Crawford disembarked from the light rail.   Mrs. Crawford testified that she stores her light rail pass in a pouch around her neck with a clear plastic window, however, her bus pass faces outwards and her light rail pass is behind the bus pass where it is not visible.  (Crawford Dep. 35:7-36:8.)  Plaintiff also testified that after she exited the light rail car, she placed the pass into her purse.  (Crawford Dep. 41:17-21.)

It is further undisputed that Plaintiff was handcuffed by Officer Spraggins, arrested for failure to obey and disorderly conduct, and transported to Baltimore City Central Booking and Intake Center.  (Pl.'s Compl. 7; Crawford Dep. 62:22-63:4; Affidavit of Tracey Spraggins at ¶ 8.) She was kept at Central Booking until 10:00 a.m. the next morning when she was released from custody.  (Crawford Dep. 85:10-13.)  Plaintiff testified that after she was released, she went to the hospital because she had scrapes and bruises, and her back and her arm were hurting. (Crawford Dep. 94:11-17; 96:19-97:6.)   According to Plaintiff, she was released from the hospital and instructed to take pain medication at home, but was not prescribed any medications. (Crawford Dep. 97:5-15.)  Plaintiff attended physical therapy afterward the incident because she "was hurting."  (Crawford Dep. 97:16-20.)  She was not referred to physical therapy by a doctor. (Crawford Dep. 98:11-14.)  Plaintiff's last visit to physical therapy was October 9, 2012, and Plaintiff testified that she has not received any medical care from the injuries from the incident since she left physical therapy.  (Crawford Dep.100:2-6; 101:4-7.)

## IV.   LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; see also *Catawba Indian Tribe of S.C. v. City of Rock Hall*, 501 F.3d 368, 370-71 (4th Cir. 2007).  As the Fourth Circuit has observed, a primary purpose of summary judgment "'is to isolate and dispose of factually unsupported claims' . . . and Rule 56 must be interpreted and applied 'in a way that allows it to accomplish this purpose.'"  *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)).

A party opposing a properly supported motion for summary judgment must, in order to survive the motion, offer evidence from which a fair-minded jury could return a verdict for the party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . , Rule 56(c) mandates the entry of summary judgment." *Celotex Corp.*, 477 U.S. at 322. Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. There must be no genuine issue of material fact. *Id.*

It is true that the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (2003). In this case, there are no material facts in dispute and the record is insufficient to support Plaintiff's claims, that is, based on the evidence in the record, no reasonable jury could render a verdict for Plaintiff. Therefore, the MTA is entitled to judgment as a matter of law.

## V.    ARGUMENT

For the reasons set forth below, Plaintiff cannot meet her burden of proof to support her remaining claims, and the MTA is entitled to summary judgment as a matter of law.

A.     **The MTA Is Entitled to Summary Judgment on Plaintiff's Count III for "Violation of the Maryland Declaration of Rights" Because Plaintiff Cannot Meet Her Burden as a Matter of Law**

In Count III of her Complaint, Plaintiff claims a violation of the Maryland Declaration of Rights Article 24 (Due Process) and Article 26 (Warrants).  While a private cause of action exists for violations of Articles 24 and 26 of the Maryland Declaration of Rights, there is no evidence in the undisputed record supporting a claim against the MTA based on the actions of the MTA officers during the alleged incident.  *See Widgeon v. E. Shore Hosp. Center*, 300 Md. 520 (1984) (holding that where an individual is deprived of his liberty or property interests in violation of articles 24 and 26 of the Maryland Declaration of Rights, he may enforce those rights by bringing a common law action for damages).  As explained further below, both Maryland and federal case law hold that only *intentional* violations of constitutional rights can create liability.

> Preliminarily, it should be pointed out that Article 24 [which guarantees citizens the due process of the law] of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and that Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24.

*Pitsenberger v. Pitsenberger*, 287 Md. 20, 27 (1980); *see also Bureau of Mines v. George's Creek*, 272 Md. 143, 156 (1974); *Davidson v. Koerber*, 454 F. Supp. 1256 (4th Cir. 1978).  Similarly, Article 26 of the Maryland Declaration of Rights, like Article 24, may be considered in the context of its federal counterpart, the Fourth Amendment to the United States Constitution ("Fourth Amendment").  *See Gadson v. State*, 341 Md. 1, 8 n.3 (1995).

"[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."  *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Thus, liability for *negligently* inflicted harm does not rise to a violation of

constitutional due process. *Id.* at 331 (emphasis added). Accordingly, "[s]ubstantive due process, enforced by section 1983, does not afford a cause of action for police negligence." *Medeiros v. O'Connell*, 150 F.3d 164, 170 (2nd Cir. 1998); *see also Daniels,* 474 U.S. at 331. Further, because the police must act in high-tension situations 'in haste, under pressure, and frequently without the luxury of a second chance, even an intermediate level of fault, such as recklessness, is not enough to impose constitutional liability." *Medeiros*, 150 F.3d at 170 (citations omitted).

### 1.    *There Is No Evidence the MTA Intentionally Deprived Plaintiff of Rights Protected by Article 24*

Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty, property, but by the judgment of his peers, or by the Law of the land." Article 24, Maryland Declaration of Rights. Under Maryland law, "Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24." *Pitsenberger*, 287 Md. at 27 (1980). The Due Process Clause of the Fourteenth Amendment provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Due Process Clause of the Fourteenth Amendment provides for three distinct types of constitutional protection against state interference:

> First, it incorporates against the states certain provisions of the Bill of Rights, including the fourth amendment's prohibition against unreasonable searches and seizures and the eighth amendment's ban on cruel and unusual punishment. Second, it has a procedural component that provides direct protection against state deprivation of life, liberty, or property without appropriate procedural safeguards. Third, it has a 'substantive' component that forbids certain deprivations of life, liberty, or property regardless of the procedures by which they are accomplished.

11

*Martin v. Gentile*, 849 F.2d 863, 867 (4th Cir. 1988) (citing *Daniels*, 474 U.S. at 337 (Stevens, J., concurring)).

The Supreme Court has "emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government,' whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citations omitted) (alteration in original). Moreover, the purpose of the due process doctrine is to "prevent governmental power from being 'used for purposes of oppression.'" *Daniels*, 474 U.S. at 331 (1986). "Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels*, 474 U.S. at 332; *see, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("[F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."). Thus, "[the Supreme Court's] cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846. Moreover, the Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848.

Conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. *Id.* *Rochin* identifies the traditional standard for determining whether a substantive due process violation occurred by asking whether the conduct 'shocks the conscience.'" *Smith v. Bernier*, 701

F. Supp. 1171, 1177 (D. Md. 1988) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). "Thus, conduct which 'shocks the conscience' or conduct which 'amount[s] to a brutal and inhumane abuse of official power literally shocking to the conscience' violates the substantive guarantees of the Due Process Clause independent of the absence or presence of post-deprivation remedies available through state tort law." *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 720 (4th Cir. 1991).

In this case, there is no evidence approaching the "most egregious" and "arbitrary" standard above as to Defendant MTA.  There is no action specifically alleged against the MTA outside of the MTA officers' conduct. The Plaintiff has not put forth any evidence that the MTA officers acted in such a manner that "shocks the conscience" or amounts to a "brutal and inhumane abuse of official power" as to constitute an abuse of governmental power in violation of Plaintiff's constitutional rights pursuant to Article 24 (Due Process) of the Maryland Declaration of Rights.  Even taking Plaintiff's allegations and testimony as true, the alleged actions of Officer Spraggins: using explicit language, putting his face in Plaintiff's and even "slamming" her to the ground to effectuate an arrest do not rise to the level required for Plaintiff to sustain her claim.  It is Plaintiff's burden to produce evidence that would present a dispute of material fact for a jury to find Defendant liable. Plaintiff has failed to do so here.

### 2. *There Is No Evidence that the MTA Intentionally Deprived the Plaintiff of Rights Protected by Article 26*

Article 26 (Warrants) of the Maryland Declaration of Rights provides:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Article 26, Maryland Declaration of Rights.

13

An analysis of Article 26, like that of Article 24, may be considered in the context of its federal counterpart, the Fourth Amendment to the United States Constitution ("Fourth Amendment"). *See Gadson v. State*, 341 Md. 1, 8 n.3 (1995). "The [appellate] courts have preferred to hold that the provisions of Maryland's fundamental documents are '*in pari materia*' with analogous federal constitutional guarantees." Dan Friedman, *The History, Development, and Interpretation of the Maryland Declaration of Rights*, 71 Temple L. Rev. 637, 645 (1998). Article 26 and the Fourth Amendment both prohibit unreasonable searches and seizures. Article 26, Maryland Declaration of Rights; U.S. Const. Amend. IV. There is no dispute for the purposes of this motion that Plaintiff's detention was a "seizure" under the Fourth Amendment and Article 26. The only issue is the reasonableness of that seizure. The Fourth Amendment does not prohibit all seizures but only those which are unreasonable. *Little v. State*, 300 Md. 485, 493 (1984); citing *Department of Transportation v. Armacost*, 299 Md. 392, 407 (1984); *Givner v. State*, 210 Md. 484, 494-495 (1956).

As a general rule, the Fourth Amendment prohibits police form detaining an individual, absent some "articulable reason" that the person seized is, or has been, engaged in criminal activity. *Gadson*, 341 Md. at 10 (1995).

> The essential purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by governmental officers in order to safeguard the privacy and security of individuals against arbitrary invasions. Hence, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. . . [T]he reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against an objective standard, whether this be probable cause or a less stringent test.

*Little v. State*, 300 Md. 485, 494, 479 A.2d 903, 907 (1984) (internal citations omitted)

Furthermore, the Maryland Court of Appeals has held that an inquiry into a violation of Article 26 "focuses on the objective reasonableness of the officer's conduct." *Richardson v. McGriff*, 361 Md. 437, 452 (2000). Additionally, "Because … the test of reasonableness 'is not capable of precise definition or mechanical application,' its proper application 'requires careful attention to the facts and circumstances of each case.'" *Id.* at 452, citing *Graham*, 490 U.S. at 396 (1989).

> [T]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . .   The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

Richardson, 361 Md. 437, 452 (2000), citing *Graham*, 490 U.S. at 396-97 (1989).

In *Boyer v. State*, 323 Md. 558, 589 (1991), the Maryland Court of Appeals further recognized that "[a] police officer's conduct should be judged not by hindsight but should be viewed in light of how a reasonably prudent officer would respond faced with the same difficult emergency situation."

In this case, even in the light most favorable to the Plaintiff, there is simply no evidence supporting a violation of Article 26 because there is no evidence that the MTA officers acted improperly and/or unlawfully or without an articulable reason or probable cause. There is no dispute from the evidence in the record that the Plaintiff did not show Officer Spraggins her pass. It is undisputed that the light rail pass was not otherwise visible or apparent to the MTA officers involved in the incident after Mrs. Crawford disembarked from the light rail.  Mrs. Crawford testified that she stores her light rail pass in a pouch around her neck with a clear plastic window, however, her bus pass faces outwards and her light rail pass is behind the bus pass where it is not visible. (Crawford Dep. 35:7-36:8.)  Plaintiff also testified that after she exited the light rail car,

she placed the pass into her purse.  (Crawford Dep. 41:17-21.)  There is also no dispute that

Plaintiff was handcuffed by Officer Spraggins, arrested for failure to obey and disorderly

conduct, and transported to Baltimore City Central Booking and Intake Center.  (Pl.'s Compl. 7;

Crawford Dep. 62:22-63:4; Affidavit of Tracey Spraggins at ¶ 8.)

Ms. Crawford's failure to show her pass is a misdemeano, for which Officer Spraggins

had authority to arrest her.  Section 7-705 of the Maryland Transportation Article provides that it

is unlawful for any person entering a transit facility or transit vehicle owned or controlled by the

Administration to: fail to pay the fare, fail to exhibit proof of payment or fail to provide

identification.  Md. Code Ann., Transp. § 7-705(a).  The Section also provides that any person

who violates any provision of the section is guilty of a misdemeanor.  Md. Code Ann., Transp. §

7-705(e).  The undisputed facts demonstrate that Officer Spraggins asked to see Plaintiff's pass,

Plaintiff did not show Officer Spraggins her pass, and that Officer Spraggins arrested her.

Additionally, the undisputed record reveals that Officer Spraggins arrested Plaintiff for *failure to*

*obey* and disorderly conduct.  (Affidavit of Tracey Spraggins at ¶ 8.)  Plaintiff has made no

showing that the officer's actions were an arbitrary invasion of her rights and an intrusion on her

constitutional interests.  Plaintiff has failed to meet the requirements for sustaining her claims for

a "violation of the Maryland Declaration of Rights," and the MTA is entitled to judgment on

Count III of Plaintiff's Complaint.

> **B.** **The MTA Is Entitled to Summary Judgment on Plaintiff's Count IV for Assault and Battery Because Plaintiff Cannot Meet Her Burden as a Matter of Law**

> **1.** ***Plaintiff's Claim for Assault Is Barred by the Statute of Limitations and Should Be Dismissed.***

Under Md. Code (2002 Repl. Vol.), Cts. & Jud. Proc. (C.J.) § 5-105, "an action for

assault, libel, or slander shall be filed within one year from the date it accrues."  If it is apparent

from the face of the complaint that the action is barred by the statute of limitations, the complaint fails to state a claim upon which relief can be granted and the statute of limitations can be the grounds for a motion to dismiss. *G & H Clearing and Landscaping v. Whitworth*, 66 Md. App. 348, 353-54 (1986); *see also Antigua Condominium Ass'n v. Melba Investors Atlantic, Inc.*, 307 Md. 700, 711 & n.5 (1986); *Doe v. Archdiocese of Wash.*, 114 Md. App. 169, 175 (1997). In Plaintiff's case, the incident giving rise to Plaintiff's claim occurred in September of 2012. The statute of limitations for an assault claim expired on year later, in September of 2013. However, Plaintiff did not file her Complaint until January of 2015, two years after the expiration of the statute of limitations for assault. Thus, Defendant MTA is clearly entitled to dismissal of Plaintiff's assault claim as barred by the statute of limitations.

> ### 2. The MTA Is Entitled to Summary Judgment as to Plaintiff's Claims for Assault and Battery Because Plaintiff Cannot Meet Her Burden as a Matter of Law.

Furthermore, even if Plaintiff's assault claim was not barred by the statute of limitations, Plaintiff cannot meet the elements for her counts of assault and battery. As explained by the Court of Special Appeals, generally:

> The crime of assault is an attempt by force to injure the person of another. Although the thought is expressed in different ways, an assault is essentially the prelude to a battery; it is committed when there is either an attempt to commit a battery or when, by an unlawful act, a person is placed in reasonable apprehension of receiving an immediate battery. A completed battery necessarily includes an assault.

*Taylor v. State*, 52 Md. App. 500, 503-04 (1982) (internal citations omitted).

In order to establish a claim for civil battery, Plaintiff must allege and prove facts sufficient to establish that Defendant caused a harmful or offensive contact with her without her consent. *See Nelson v. Carroll*, 355 Md. 593, 600 (1999) (citing Restatement (Second) of

Torts 13 & cmt. D (1965)).  Plaintiff must further establish that Defendant possessed a general intent to *unlawfully* invade her physical well-being through harmful or offensive contact.  *Id*. at 602 (emphasis added).  Additionally, where a claim for assault or battery arises out of a claim for false arrest or imprisonment, as it does here, the claim is "analytically dependent upon the cause of action for false imprisonment."  *Sydnor v. Finish Line, Inc.*, Civil No. CCB-10-3650, 2011 U.S. Dist. LEXIS 112195, at *8 (D. Md. Sept. 29, 2011) (quoting *Ashton v. Brown*, 339 Md. 70, 119 n.24 (1995)).  In other words, "where there is legal justification for the detention, reasonable physical force used to effectuate the detention is not tortious."  *Id.* at *8.  Assault or battery "can only occur when there is no legal authority or justification for the arresting officer's actions." *Hines v. French*, 157 Md. App. 536, 551 (2004).

Quite simply, Plaintiff has proffered no evidence whatsoever that the officers acted without legal authority or justification.  There is no fact witness or expert witness testimony in the record that raises a material dispute of fact sufficient to establish a dispute that the officers acted without justification.  Even in the light most favorable to Plaintiff, mere allegations that a dispute of fact exists or general denials are insufficient, to avoid summary judgment, the non-moving party must identify specific factual disputes which would impact the final disposition of the case.  *Baltimore Gas & Electric Co. v. Commercial Union Ins. Co.*, 133 Md. App. 540 (1997); *Vanhook v. Merchants Mutual Ins. Co.*, 22 Md. App. 22 (1974); *Davis v. Montgomery County*, 267 Md. 456 (1972); *White v. Friel*, 210 Md. 274 (1956).

Here, the undisputed record illustrates that Plaintiff did not show her pass to the officers on the platform upon request.  Section 7-705 of the Maryland Transportation Article provides that it is unlawful for any person entering a transit facility or transit vehicle owned or controlled by the Administration to: fail to pay the fare, fail to exhibit proof of payment or fail to provide

identification. Md. Code Ann., Transp. § 7-705(a). The Section also provides that any person who violates any provision of the section is guilty of a misdemeanor. Md. Code Ann., Transp. § 7-705(e). Plaintiff has proffered no testimony or evidence to demonstrate that she complied with the Officer's order. She was then charged with failure to obey and disorderly conduct. There is nothing in the record to allege or offer a modicum of proof that the officer arrested Plaintiff without legal justification. Thus, Plaintiff has failed to meet the requirements for sustaining her assault and battery claims, and therefore, the MTA is entitled to judgment on Count IV of Plaintiff's Complaint.

> **C.     The MTA Is Entitled to Summary Judgment on Plaintiff's Count V for False Arrest and Imprisonment Because Plaintiff Cannot Meet Her Burden as a Matter of Law**

With respect to Plaintiff's Count V for false arrest and false imprisonment, it is well established that, "[a]lthough the intentional torts of false arrest and false imprisonment are separate causes of action, they share the same elements." *Okwa v. Harper*, 360 Md. 161, 190 (2000). To establish these torts, Plaintiff must prove that Defendant "deprived [the plaintiff] of [her] liberty without consent and without legal justification." *Okwa*, 360 Md. at 190; *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995). Legal justification has been defined by the Court of Appeals of Maryland as the equivalent of legal authority. *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 655 (1970). Thus, with respect to police officers, their liability will "ordinarily depend upon whether or not the officer acted within his legal authority to arrest." *Montgomery Ward*, 339 Md. at 721.

The validity of an arrest is to be judged by whether the arresting officer had probable cause for the arrest. *Hamm v. State*, 72 Md. App. 176, 181-82 (1987). A finding of probable cause to arrest should be based on the factual and practical considerations of everyday life on

which reasonable people act and is assessed by considering the totality of circumstances.  *Green v. Brooks*, 125 Md. App. 349, 367 (1999).  Further, probable cause is a good faith belief or reasonable suspicion that would lead a prudent person to believe that the individual who is arrested did in fact commit the offense with which that individual was charged.  *See Cuffia v. State*, 14 Md. App. 521 (1972); *Franklin v. Montgomery Cty.*, Civil No. DKC 2005-0489, 2006 U.S. Dist. LEXIS 68476, at *57 (D. Md. Sept. 13, 2006) ("Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest."); *Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304 (D. Md. 2002) (same); *Muntjan v. Waltemeyer*, 166 F. Supp. 2d 424, 428 (D. Md. 2001) (stating that probable cause requires facts and circumstance sufficient to warrant a prudent person in believing that the suspect committed or was committing an offense).  The undisputed testimony in the record is that the MTA officer had probable cause to arrest Plaintiff.  Section 7-705 of the Maryland Transportation Article provides that it is unlawful for any person entering a transit facility or transit vehicle owned or controlled by the Administration to fail to pay the fare, fail to exhibit proof of payment or fail to provide identification. Md. Code Ann., Transp. § 7-705(a). The Section also provides that any person who violates any provision of the section is guilty of a misdemeanor.  Md. Code Ann., Transp. § 7-705(e).

It is undisputed that Officer Spraggins ordered Plaintiff to show her pass, and that Plaintiff *did not show* her pass to Officer Spraggins at the West Patapsco Avenue light rail station.  Plaintiff was then charged with failure to obey.  The undisputed record reflects that Officer Spraggins acted within his legal authority to arrest Plaintiff for failure to obey.

**D.     The MTA Is Entitled to Summary Judgment on Plaintiff's Count VI for Negligence Because Plaintiff Cannot Meet Her Burden as a Matter of Law**

To maintain an action in negligence, a plaintiff must assert the following elements: "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (quoting *BG & E v. Lane*, 338 Md. 34, 43 (1995) (citing *Rosenblatt v. Exxon*, 335 Md. 58, 76 (1994)).  "Duty" in negligence "has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Ashburn v. Anne Arundel County*, 306 Md. 617, 627 (1986) (citation omitted). The existence of "a legally recognized duty owed by the defendant to the plaintiff or to a class of persons of which the plaintiff is a member is vital to sustaining a cause of action in negligence." *Valentine*, 353 Md. at 549; *see also Ashburn*, 306 Md. at 627 ("Negligence is a breach of a duty owed to one, and absent that duty, there can be no negligence.").

The Maryland Court of Appeals has defined the scope of the tort duty owed by police officers to members of the public by applying the "public duty doctrine."  Under the public duty doctrine, "when a statute or common law 'imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort.'" *Muthukumarana v. Montgomery Cty.*, 370 Md. 447, 486 (2002) (citing DAN B. DOBBS, THE LAW OF TORTS § 271 (2000)).  The "duty owed by the police by virtue of their positions as officers is a duty to protect the public." *Ashburn*, 306 Md. at 628; see also 2 Cooley On Torts § 300, at 385-86 (4th ed. 1932) ("if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a

public and not an individual injury, and must be redressed, if at all, in some form of public prosecution.").

Police officers therefore "ordinarily may not be held liable for failure to protect specific persons because they owe no duty, as the first element of a negligence action requires, to those individuals." *Muthukumarana*, 370 Md. at 387. "A policy which places a duty on a police officer to insure the safety of each member of the community would create an unnecessary burden on the judicial system. Under such circumstances, the slightest error of a policeman would give rise to a potential law suit. *Ashburn*, 306 Md. at 630 (internal citations omitted).

There is no evidence in the record from which Plaintiff could imply a duty between her and the MTA police officers or the MTA. Because Plaintiff has not, and cannot, establish that the officers and the MTA owed her a duty, Plaintiff also cannot reach the rest of the negligence standard – that there was a breach of that duty that caused her damages. Quite simply, Plaintiff cannot sustain her claim as a matter of law and the MTA is entitled to judgment on her claim for negligence.

### E.   The MTA Is Entitled to Summary Judgment on Plaintiff's Count VII for Gross Negligence Because Plaintiff Cannot Meet Her Burden as a Matter of Law

Plaintiff cannot sustain her claim for gross negligence because Defendant is entitled to sovereign immunity. Although the State (and its entities, such as Defendant), has broadly waived sovereign immunity for a number of torts, it has not waived its sovereign immunity for gross negligence under the Maryland Tort Claims Act. *See* Md. Code Ann. State Gov't Art. §§ 12-104(b), 12-105; Md. Code Ann. Cts. & Jud. Proc. 5-522(a)(1-3).

However, even if Plaintiff could assert a gross negligence claim against the MTA, to sustain her claim, Plaintiff must allege facts establishing "an intentional failure to perform a

manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez*, 443 Md. 680, 686 (2015).  The Maryland Court of Appeals has held that a party is grossly negligent only if he or she "inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts as if such rights did not exist." *Id.*

That is, gross negligence is

an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Romanesk v. Rose*, 248 Md. 420, 423 (1968).  Where the undisputed facts fail to suggest wanton or reckless disregard for Plaintiff's life, summary judgment is appropriate.  *Boucher v. Riner*, 68 Md. App. 539, 547-48 (1986).  By way of example of this threshold, Maryland courts have found sufficient evidence to support a finding of gross negligence when a corrections officer failed to intervene while one inmate killed another, *Cooper*, 443 Md. 680 (2015), or when a drunk driver traveling at twice the legal speed limit veered off the road and injured his passengers. *Romanesk*, 248 Md. 420 (1968). Plaintiff has not offered any evidence in the record that the MTA officers acted such that he was in "reckless disregard of the consequences as affecting the life or property of another."  Even taking Plaintiff's allegations and testimony as true, the alleged actions of Officer Spraggins: using explicit language, putting his face in Plaintiff's and even "slamming" her to the ground to effectuate an arrest do not rise to the level required for Plaintiff to sustain her claim of gross negligence.

**F.** **The MTA Is Entitled to Summary Judgment on Plaintiff's Count VIII for Intentional Infliction of Emotional Distress Because Plaintiff Cannot Meet Her Burden as a Matter of Law**

Additionally, Plaintiff's claim for intentional infliction of emotional distress fails. First, Plaintiff simply cannot meet the stringent burden of sustaining an intentional infliction of emotional distress claim based on the undisputed facts of this case. Second, even if Plaintiff could establish that the MTA officers acted in such a way to sustain her intentional infliction of emotional distress claim, in doing so, Plaintiff would have to establish that the officers acted with malice, for which the State (and its entities, including the MTA) retains sovereign immunity. Md. Code. Ann., State Gov't §§ 12-101(a)(3)(i), 12-104(b) and 12-105; Cts. & Jud. Proc. § 5-522(a).

If Plaintiff were to sustain her intentional infliction of emotional distress claim, she must establish that: (1) Defendant engaged in intentional or reckless conduct; (2) Defendant's conduct was extreme and outrageous; (3) a causal connection exists between Defendant's conduct and Plaintiff's alleged emotional distress; and (4) Plaintiff's emotional distress is severe. *See Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (quoting *Harris v. Jones*, 291 Md. 560, 566 (1977)). Claims of intentional infliction of emotional distress are "rarely viable in a case brought under Maryland law." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007). To resist summary judgment, evidence of specific facts supporting all four elements of the tort must be adduced. *See Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175 (1989). To guard against an onslaught of "emotional distress" claims, Maryland courts apply stringent standards of pleading and proof and rarely uphold intentional infliction of emotional distress claims. *See Green v. Wills Grp., Inc.*, 161 F. Supp. 2d 618, 623 (D. Md. 2001). Here, the record does not demonstrate, as a matter of law, that the MTA's conduct through its employee officers

was "extreme and outrageous" or that Plaintiff has sustained "severe emotional distress" as a result of the incident. As such, summary judgment is appropriate.

Plaintiff is unable to meet the second element of intentional infliction of emotional distress because she has failed to establish any "extreme or outrageous" conduct on the part of any MTA officer. A defendant's conduct is considered extreme and outrageous "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 281 Md. at 567 (1977) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). In fact, only the most grotesque and appalling conduct is found to be "extreme and outrageous" in Maryland.[1]

Additionally, there has been no evidence obtained during discovery that Defendant "*desired* to inflict severe emotional distress, *knew* that such distress was *certain or substantially certain* to result from [their] conduct, or acted recklessly in deliberate disregard of *a high degree of probability* that the emotional distress will follow." *Agbebaku v. Sigma Aldrich, Inc.*, 2003 Md. Cir. Ct. LEXIS 14, *20, 2003 WL 24258219 (Md. Cir. Ct. 2003) (quoting *Foor*, 78 Md. App. at 175 (1989) (emphasis in original).

Here, assuming Plaintiff's allegations to be true, Plaintiff fails to demonstrate "extreme and outrageous" conduct as a matter of law. Again taking Plaintiff's testimony as true, the alleged actions of Officer Spraggins: using explicit language, putting his face in Plaintiff's and even "slamming" her to the ground to effectuate an arrest does not remotely approach being "extreme and outrageous" for the purposes of an intentional infliction of emotional distress

---

[1] For example, Maryland courts have found conduct to be "extreme and outrageous" where: a psychologist had sexual relations with the plaintiff's wife during the time he was treating the couple as their marriage counselor; a physician did not tell the nurse with whom he had sexual intercourse that he had herpes; and where insurer forced claimant to submit to psychiatric examination for the purpose of forcing her to abandon her claim or commit suicide. *See Batson v. Shiflett*, 325 Md. 684, 734 (1992).

claim. *See, e.g.*, *Ashton v. Brown*, 339 Md. 70, 116 n.22 (1992) (holding, as a matter of law, that an unlawful arrest did not rise to the extreme or outrageous conduct required for a claim of intentional infliction of emotional distress); *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728-29 (2001) (holding that being "dragged" across a public hall in handcuffs was not extreme or outrageous for the purposes of intentional infliction of emotional distress claim).

In *Lee v. Pfeifer*, 916 F. Supp. 501 (D. Md. 1996), the court found that a supervisor's taunting of the plaintiff, by calling him a "cry baby," giving him undesirable shifts, glaring at him when he left work, and standing "nose to nose" with the plaintiff, was not so outrageous "as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 507. In *Kohler v. Shenasky*, 914 F. Supp. 1206 (D. Md. 1995), the court found that a urologist's refusal to treat the plaintiff for incontinence until the patient lost weight was neither intentional nor reckless and the conduct was neither extreme nor outrageous. In *Batson v. Shiflett*, 325 Md. 684 (1992), the court held that although defamatory language had occurred, such conduct did not satisfy the high standard for extreme and outrageous conduct necessary to establish the tort of intentional infliction of emotional distress. Based on the clear precedents discussed above, there is no question the alleged acts do *not* rise to the level of actionable conduct necessary to establish intentional infliction of emotional distress under Maryland law.

Finally, the third and fourth elements of a claim for intentional infliction of emotional distress cannot be met because Plaintiff has failed to establish "severe" mental anguish. Emotional distress is deemed severe where the plaintiff has "suffered a severely disabling emotional response to the defendant's conduct." *Harris*, 281 Md. at 570. The emotional distress must be so severe that "no reasonable man in a civilized society should be

expected to endure it." *Id.* at 572 (citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970)).  In *Takacs*, the plaintiff's allegation of "debilitating conditions, including 'severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach'" was insufficient because she did not allege an inability to function on a daily basis. 473 F. Supp. 2d at 652.  Plaintiff has failed to establish that she suffered any such reaction in this case.

Plaintiff's emotional distress consists merely of an ambiguous "fear of authority." (Crawford Dep. 130:4-6.)  Even assuming that Plaintiff's alleged "fear of authority" is related to the incident at issue, it is clearly not so severely disabling that "no reasonable man could be expected to endure it."  *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000).  Ms. Crawford testified that the extent of her emotional or psychological suffering is as follows:

> Q.      Yeah, it's I have – when I was talking to my therapist the other day, I was telling her how this affect me because I don't like I can't, when you see a security guard, it frightens me to see anybody, a [sic] authority figure, you know. And I can't – I can't be myself. I need to leave. It reminds me what happened to me. And I never felt that way around authority figures, being around people with authority. And I have flashbacks about it because in my life, ma'am, I never did anything to have someone to come at me like that. I always try to follow the rules. And I was a security guard myself. And this has affected my life by being around people with authority. I just don't feel comfortable.

(Crawford Dep. 129:5-21.)

As such, Plaintiff has no evidence or testimony, expert or otherwise, to show that she has suffered "severe emotional distress," let alone to establish that the MTA officers' conduct caused injury so severely disabling that Plaintiff could not be expected to endure it.  Thus, summary judgment is appropriate.

Furthermore, in *Hines v. French*, 157 Md. App. 536 (2004), the court considered conclusory allegations of intentional conduct, holding that they did not properly allege a cause of action for intentional infliction of emotional distress. *See also Hill v. Abercrombie & Fitch*, Civil

Action No. ELH-11-00910, 2011 U.S. Dist. LEXIS 107585, at *24 (D. Md. Sep. 20, 2011) ("[E]ach of [the] elements must be pled and proved with specificity.  It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist"); *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 368 (2000) (stating that conclusory allegations of intentional infliction of emotional distress fail to state a claim); *Mitchell v. Balt. Sun Co.*, 164 Md. App. 497 (2005).

Plaintiff has failed to meet the demanding requirements for sustaining an intentional infliction of emotional distress claim in Maryland. Even if Plaintiff could meet her requirements to sustaining her intentional infliction of emotional distress, by doing so she would need to show that the MTA officers were acting with malice.  If the officers were acting with malice, the State (and its entities, such as the MTA), has sovereign immunity as to the officer's actions. Therefore, the MTA is entitled to judgment on Count VIII of Plaintiff's Complaint.

> **G.    The MTA Is Entitled to Summary Judgment on Plaintiff's Count IX for Negligent "Hiring, Training, Supervision, Discipline and Retention" Because Plaintiff Cannot Meet Her Burden of Proof as a Matter of Law**

To maintain a cause of action for negligent hiring and retention, Plaintiff must establish (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *See McGuiness v. Brink's, Inc.*, 60 F. Supp. 2d 496, 501 (1999).  There is no dispute for the purposes of this motion that there exists an employment relationship between the MTA and the MTA officers.  "[T]here is a rebuttable presumption that an employer uses due care in hiring an employee" which is overcome with evidence.  *See Evans v. Morsell*, 284 Md. 160, 165 (1978).  Plaintiff's claim fails as a matter of

law because she cannot demonstrate that the MTA officers were incompetent employees, that the MTA had actual or constructive knowledge of their incompetence, that the MTA officers' acts or omissions caused her injuries, and that the MTA's negligence in hiring or training the MTA officers is the proximate cause of her injuries.

Specifically, Plaintiff has made no allegations nor solicited or offered any evidence that any of the involved MTA officers were incompetent, or had a history that would have demonstrated their incompetence that had the MTA known, should have prevented the MTA from hiring the MTA officers. As explained above, even when taken in the light most favorable to the Plaintiff, cannot be based on mere allegations or conclusory statements alone. However, here, Plaintiff does not even proffer conclusory statements to support her mere allegations. The record is completely devoid of *any* evidence that Plaintiff could use to counter the rebuttable presumption that an employer, like the MTA, uses due care when hiring its employees. Plaintiff has failed to meet the requirements for sustaining a claim for negligent hiring and therefore, the MTA is entitled to judgment on Count IX of Plaintiff's Complaint.

**H.     Plaintiff's Demand for Punitive Damages Should Be Struck Because Plaintiff Cannot Meet Her Burden of Proof as a Matter of Law**

Finally, this Court should strike Plaintiff's demand for punitive damages because Plaintiff is unable to sustain her demand for punitive damages under Maryland law because Defendant retains sovereign immunity for punitive damages. Although the State (and its entities, such as Defendant), has broadly waived sovereign immunity for a number of torts, it has not waived its sovereign immunity for punitive damages under the Maryland Tort Claims Act. *See* Md. Code Ann. State Gov't Art. §§ 12-104(b), 12-105; Md. Code Ann. Cts. & Jud. Proc. 5-522(a)(1-3).

Even if the State, including Defendant, waived its sovereign immunity as to punitive damages, Plaintiff still cannot meet her burden to show that the requisite showing for punitive

damages has been met. Recognizing the potential for abuse stemming from unwarranted punitive damage demands, Maryland courts have held that "to recover punitive damages in any tort action, 'facts sufficient to show *actual malice* must be pleaded and proven by clear and convincing evidence.'" *Dow v. Jones*, 232 F. Supp. 2d 491, 496 (D. Md. 2002) (quoting *Scott v. Jenkins*, 345 Md. 21, 29 (1997)); *Owens-Ill. v. Zenobia*, 325 Md. 420, 460 (1992) (defining actual malice sufficient to justify an award of punitive damages as "evil motive, intent to injure, ill will, or fraud"). Moreover, the evil intent must be established with a "'high degree of specificity.'" *Dow*, 232 F. Supp. 2d at 496 (quoting *Scott*, 345 Md. at 36)).

In ruling on a motion for summary judgment on the issue of punitive damages, courts must apply the clear and convincing evidence standard so as not to "'dull the potentially keen edge of the doctrine [of punitive damages] as an effective deterrent of truly reprehensible conduct.'" *Zenobia*, 325 Md. at 457-58 (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985)). The Maryland Court of Appeals specifically set this standard for trial courts to enforce in order to prevent "inconsistent jury verdicts involving similar facts . . . [so as] to undermine the deterrent effect of [punitive damages] awards." *Id.* at 459.

Plaintiff cannot meet these demanding standards in this case. As reiterated throughout this motion, the summary judgment record establishes that the interactions between Plaintiff and the MTA officers resulted from the officers arresting Plaintiff after she did not show her MTA pass and subsequently filing a Statement of Charges for failure to obey and disorderly conduct. Even if the officers lacked probable cause for the arrest as Plaintiff alleges, Plaintiff has failed to demonstrate that the MTA officers' conduct resulted from "evil motive, intent to injure, will, or fraud."

There is simply *no* evidence in the record that any MTA officer or the MTA acted with "evil motive, intent to injure, ill will, or fraud." *Zenobia*, 325 Md. at 457-58. Moreover, there is nothing about the facts of this case that would suggest that a punitive damages award is necessary as a "deterrent of truly reprehensible conduct" or that such an award would advance public policy in any way. *See id.* Plaintiff has consequently failed to meet her burden to sustain their punitive damages demand and the MTA is entitled to judgment on the issue of punitive damages.

## VI.    CONCLUSION

In order to prove her claims against Defendant, Plaintiff must demonstrate that there is *evidence* in the record to support her claims such that there is a material dispute of fact. Plaintiff's claims fall far short of this burden. Even viewing the evidence in the record in the light most favorable to Plaintiff, it is clear she cannot satisfy her burden of proving her claims against the MTA. For the forgoing reasons, Defendant Maryland Transit Administration respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment on its behalf.


Respectfully submitted,


*/s/ Lynn C. Schlie*
Robin Silver (No. 03306)
Michael L. Haslup (No. 27916)
Lynn C. Schlie (No. 19062)
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21201


*Attorneys for Defendant*
*Maryland Transit Administration*

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of July, 2016, Defendant Maryland Transit Administration's Motion to Dismiss and Motion for Summary Judgment, was sent via ECF to:

> Charles H. Edwards IV (No. 18349)
> Law Office of Barry R. Glazer, P.C.
> P.O. Box 27166
> 1010 Light Street
> Baltimore, MD 21230
>
> *Attorney for Plaintiff*

*/s/ Lynn C. Schlie*
Lynn C. Schlie